

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 26, 2024

**BY ECF**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. John Roesser*, 23 Cr. 155 (AT)

Dear Judge Torres:

      The Government respectfully submits this letter in advance of the sentencing of John Roesser (the "defendant") on February 13, 2024. The defendant, a former lawyer and recidivist white collar offender, forged documents and lied to the United States Bankruptcy Court for the Southern District of New York in order to fraudulently extend the protections of bankruptcy over his substantial assets. Following a change to the Guidelines after the defendant's guilty plea, the applicable Guidelines range is now 15 to 21 months. The Government submits that a sentence within this range would be sufficient, but not more than necessary, to achieve the goals of sentencing.

      **I.**      **Offense and Relevant Conduct**

      From in or about March 2013 through in or about January 2018, Roesser was a defendant at three multinational law firms. During his time as a partner at these law firms, Roesser earned substantial income—and incurred substantial income tax liability. Roesser resigned from the New York bar in or about June 2020, after admitting to misappropriating client funds.

      On or about February 3, 2022, Roesser filed for Chapter 11 bankruptcy (the "Bankruptcy"). PSR ¶ 10. In a Chapter 11 bankruptcy, a debtor may remain "in possession," meaning that the debtor keeps possession and control of his assets during the bankruptcy. But a debtor-in-possession must propose a viable plan of reorganization, on which creditors vote. If a debtor fails to comply with the requirements of Chapter 11, a Chapter 11 bankruptcy can be converted to a Chapter 7 bankruptcy or dismissed. In a Chapter 7 bankruptcy, an appointed trustee usually converts a debtor's assets into cash for distribution among creditors. If a bankruptcy is dismissed, the debtor loses the protections of bankruptcy; for example, creditors can take steps to seize a debtor's assets.

Roesser's assets included a house he estimated was worth millions of dollars and an Aston Martin Rapide, a luxury sports car. PSR ¶ 10.

Roesser sought to remain a debtor-in-possession during the Bankruptcy, and on or about February 17, 2022, he opened a debtor-in-possession account for the Bankruptcy (the "DIP Account"). PSR ¶ 11.

On or about February 17, 2022, Roesser submitted a declaration (the "Declaration") in the Bankruptcy. PSR ¶ 12. Roesser declared under penalty of perjury that the Declaration was true and correct. PSR ¶ 12. The Declaration stated, in part, that Roesser "[had] significant tax debt, which I will attempt to deal with in my chapter 11 reorganization." PSR ¶ 12. The Declaration also stated, "Currently, I am in the real estate business and expect a commission of approximately $9,500,000 of which 45% would inure to my benefit and the other 55% to my partner. I expect payment of this commission in June of 2022." PSR ¶ 12.

On or about February 22, 2022, the Internal Revenue Service (the "IRS") filed a Proof of Claim in the Bankruptcy, listing the IRS's claims against Roesser. PSR ¶ 13. These claims totaled $2,229,971.77 for income taxes assessed between 2014 and 2019. PSR ¶ 13. After adding penalties and interest, these claims totaled $3,850,819.07. PSR ¶ 13.

On or about March 15, 2022, at a meeting held in the Bankruptcy, Roesser testified under oath, that he expected that a limited liability company (the "LLC") in which he held a 45% interest would receive approximately $9.6 million on or before June 2022. PSR ¶ 14. At a continued meeting held in the Bankruptcy on or about April 18, 2022, Roesser again testified that he expected to receive millions of dollars soon. PSR ¶ 14.

On or about June 27, 2022, a legal assistant for Roesser's lawyer sent an Assistant United States Attorney in the Southern District of New York (the "AUSA") representing the IRS in the Bankruptcy a document ("Bank Record-1") purporting to show an online banking screenshot relating to a bank account held by the LLC (the "LLC Account"). PSR ¶ 15. The legal assistant's message stated that Bank Record-1 had been provided by Roesser that day. PSR ¶ 15. Bank Record-1 showed an available balance of $9,661,090.00 in the LLC Account. But Bank Record-1 was a forgery. PSR ¶ 15. The LLC Account never had more than $200 in it. PSR ¶ 15.

On or about July 6, 2022, Roesser's lawyer sent the AUSA a document ("Bank Record-2") purporting to show an online banking screenshot relating to the DIP Account. PSR ¶ 16. Bank Record-2 showed an available balance of $9,661,000.00 in the DIP Account. PSR ¶ 16. But Bank Record-2 was also a forgery. The DIP Account never had a positive balance. PSR ¶ 16.

On or about August 8, 2022 and August 9, 2022, Roesser's lawyer and the AUSA electronically signed a stipulation (the "Stipulation") stating, in sum and substance, that the secured claims of the IRS would be resolved, provided that Roesser paid $3,923,981.26 to the IRS within seven days after the Stipulation was so-ordered by a Judge. PSR ¶ 17.

On or about September 8, 2022, Roesser's lawyer filed in the Bankruptcy on Roesser's behalf a monthly operating report (the "Monthly Operating Report"). PSR ¶ 18. The Monthly Operating Report was electronically signed by Roesser and stated, "I declare under penalty of perjury that

the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate." PSR ¶ 18.

The Monthly Operating Report listed for "Total receipts (net of transfers between accounts)," the amount $9,662,594, and for "Cash balance end of month," the amount $9,602,924. PSR ¶ 18. Attached to the Monthly Operating Report was a document ("Bank Record-3"), purporting to be an Account Information Report for the DIP Account. PSR ¶ 18. Bank Record-3 showed a current balance of $9,578,105.73, a last deposit amount of $9,661,000.00, and a last deposit date of July 1, 2022. PSR ¶ 18. However, the Monthly Operating Report, including the amounts it listed for "Total Receipts" and "Cash balance end of month," and Bank Record-3, were false. The DIP Account never received $9,661,000.00 on July 1, 2022, or any other date. PSR ¶ 18. In fact, the DIP Account never had a positive balance. PSR ¶ 18.

On or about September 23, 2022, Judge Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York so-ordered the Stipulation. The same day, a legal assistant to Roesser's lawyer sent the AUSA a copy of a check made out to the "U.S. Treasury" in the amount of $3,923,981.26. PSR ¶ 19. This check purported to be from the DIP Account. PSR ¶ 19. However, the DIP Account did not have a positive balance, let alone sufficient funds to pay the check. PSR ¶ 19.

On or about March 3, 2023, Judge Lane dismissed the defendant's bankruptcy case. Without the protections of bankruptcy, creditors can now take steps to seize Roesser's assets to pay his debts. As a result of his fraud, the defendant received the protections of bankruptcy for an extended period. PSR ¶ 22.

## II.     Procedural History, Plea Agreement, and the Guidelines

On March 27, 2023, a grand jury sitting in this District returned an indictment (the "Indictment") that charged the defendant with one count of false oaths and claims in bankruptcy ("Count One"), in violation of Title 18, United States Code, Sections 152(3), 152(8), and 2, and one count of falsification of records in bankruptcy ("Count Two"), in violation of Title 18, United States Code, Sections 1519 and 2. (ECF No. 1). The defendant was arrested on March 28, 2023, and presented before Magistrate Judge Robert W. Lehrburger the same day.

On September 12, 2023, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to Count One of the Indictment. In the Plea Agreement, the parties stipulated that the applicable sentencing range under the Guidelines was 18 to 24 months' imprisonment. The PSR calculates the offense level consistent with the Plea Agreement: pursuant to U.S.S.G. § 2J1.3(a), the base offense level is 14. PSR ¶ 34. Pursuant to U.S.S.G. § 2J1.3(b)(2), three levels are added because the offense resulted in substantial interference with the administration of justice. PSR ¶ 35. Three levels are removed because of the defendant's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a)-(b). PSR ¶¶ 41-42. This results in a Guidelines offense level of 14.

The Plea Agreement calculated three criminal history points for the defendant. In particular, the defendant pleaded guilty on June 22, 2022, in Suffolk County 1st District Court to petit larceny, in violation of N.Y.P.L. § 155.25, and on August 17, 2022, was sentenced to three

years' probation. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in one criminal history point. PSR ¶¶ 45-46. The Plea Agreement added two additional criminal history points because the defendant was on probation from his 2022 conviction when he committed the instant offense. However, between when the parties entered into the Plea Agreement and the defendant's upcoming sentencing, U.S.S.G. § 4A1.1 was amended to require that a defendant otherwise have seven criminal history points before points are added for a defendant being under a criminal justice sentence when committing the instant offense. *See* U.S.S.G. Amendment 821; U.S.S.G. § 4A1.1(e). Accordingly, the PSR and the defendant's sentencing submission calculate the defendant's total criminal history score as one, and the defendant's criminal history category as I. This results in a Guidelines Range of 15 to 21 months' imprisonment. The PSR recommends a sentence of time served. PSR at 28.

### III. Discussion

#### A. Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 578 U.S. 189, 199-200 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) the four legitimate purposes of sentencing, as set forth below, *see id.* § 3553(a)(2); (3) "the kinds of sentences available," *id.* § 3553(a)(3); (4) the Guidelines range itself, *see id.* § 3553(a)(4); (5) any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); (6) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (7) "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent that a district court imposes a sentence outside the range recommended by the Guidelines, it must "consider the extent of the deviation and ensure that the

justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50) (internal quotation marks omitted).

### B. A Guidelines Sentence Is Appropriate

The Government respectfully submits that a sentence within the Guidelines range of 15 to 21 months' imprisonment would be just. In particular, such a sentence is called for by the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to promote respect for the law, provide adequate punishment, and provide deterrence.

*First*, the defendant's conduct was serious and sophisticated. He forged documents, submitted them to the Bankruptcy Court, and lied to counsel for his creditor, the IRS, in a multi-month scheme to maintain the protections of bankruptcy. The bankruptcy system is a lifeline for many individuals who rely on it to keep their lives together while navigating extreme financial difficulties. While the number of documents in this case may appear small, the defendant struck at the heart of an important legal system that provides significant relief across the country. When people like the defendant lie and distort the proper functioning of the bankruptcy courts, they weaken the legitimacy of the bankruptcy system and its ability to provide just relief and to resolve disputes. Moreover, the defendant's conduct was sophisticated: he forged bank records and a check made out to the United States Treasury and submitted them to the Bankruptcy Court and an Assistant United States Attorney in a way precisely designed to buy the defendant more time in bankruptcy.

*Second*, the sentence requested herein is necessary to reflect the history and characteristics of the defendant, promote respect for the law, and provide adequate punishment. Unlike many defendants who appear before this Court, the defendant is a highly educated former lawyer with many resources, including a luxury Aston Martin Rapide, a sportscar he kept during his fraudulently extended bankruptcy. The defendant is also a recidivist white collar criminal: he converted escrow funds to his own use in connection with the failed sale of his mother's home. PSR ¶ 46. The defendant committed the instant fraud while on probation for this prior larceny. Such conduct is particularly striking because the defendant is a former lawyer who, by virtue of his training and long career in the law, knew both how to commit sophisticated white collar crimes and the serious harms that these sorts of offenses cause. In addition, at the core of the instant case is the defendant's millions in taxes due to the IRS. The defendant was not charged with tax evasion, but the Court should take into account that a main creditor he fraudulently maintained protection from was the public fisc.

*Third*, the need for general deterrence is acute in this case. One of the paramount factors that the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id*. This Court's sentence of the defendant should send a strong and clear message to others that sophisticated

frauds, particularly those targeting a system as important and vulnerable to abuse as the bankruptcy courts, will be met with serious consequences.

### IV.    Conclusion

The defendant is a highly educated former lawyer—and recidivist white collar offender—who avoid paying taxes for many years. He engaged in a sophisticated scheme to deceive the bankruptcy court and the IRS, including by forging documents, so that he could remain in bankruptcy and keep his substantial assets. On these facts, the Government respectfully submits that a sentence of 15 to 21 months' imprisonment would adequately reflect the seriousness of his conduct, provide just punishment, promote respect for the law, and send a message to would-be abusers of the bankruptcy courts that a substantial jail term is the consequence of such harmful criminal actions.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/ Steven J. Kochevar
Steven J. Kochevar
Assistant United States Attorney
(212) 637-2262

cc:    Mark I. Cohen, Esq. (by ECF)